UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JONATHAN B. BLUNTSON,
a/k/a JONATHAN B. BLUNSTON,
DC# 598531,

Petitioner,

v. Case No. 3:13cv20/MCR/CJK

MICHAEL D. CREWS,

Respondent.
_______________________________/

REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254. (Doc. 1). Respondent filed an answer, submitting relevant portions of the state court record. (Doc. 12). Petitioner replied. (Docs. 15, 18). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter. Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts. The undersigned further concludes that the pleadings and attachments before the court show that petitioner is not entitled to federal habeas relief, and that the petition should be denied.

BACKGROUND AND PROCEDURAL HISTORY

From July to December of 2008, the State of Florida filed a series of informations against petitioner in the Circuit Court for Escambia County, Florida. On July 23, 2008, petitioner was charged in Case No. 08-CF-3028 with (1) Burglary of an Unoccupied Dwelling in violation of Fla. Stat. § 810.02(1)(b) and (3)(b), second degree felony; (2) Grand Theft in violation of Fla. Stat. §§ 812.014(1)(a) and (b) and 812.014(2)(c)1., a third degree felony; (3) Robbery by Sudden Snatching in violation of Fla. Stat. § 812.131, a third degree felony; and (4) Criminal Mischief in violation of Fla. Stat. § 806.13(1)(a) and (b)1., a second degree misdemeanor. (Ex. C, pp. 1-2).[1] These crimes were alleged to have occurred on June 23, 2008. (*Id*.). On July 29, 2008, the State noticed petitioner's qualification as a Prison Release Reoffender, and also noticed its intent to seek Habitual Felony Offender ("HFO") and Violent Career Criminal sentencing. (Ex. C, pp. 13-15).

On October 27, 2008, petitioner was charged in Case No. 08-CF-5241 with (1) Dealing in Stolen Property by Trafficking in violation of Fla. Stat. § 812.019(1), a second degree felony; and (2) Pawnbroker Transaction Fraud in violation of Fla. Stat. § 539.001(8)(b)8.a., a third degree felony. (Ex. C, p. 3). These crimes were alleged to have occurred on September 25, 2008. (*Id*.).

On October 28, 2008, petitioner was charged in Case No. 08-CF-5242 with (1) Burglary of an Unoccupied Dwelling in violation of Fla. Stat. § 810.02(1)(b) and (3)(b), a second degree felony; (2) Grand Theft in violation of Fla. Stat. §§ 812.014(1)(a) and (b) and 812.014(2)(c)1., a third degree felony; and (3) Criminal Mischief in violation of Fla. Stat. § 806.13(1)(a) and (b)2, a first degree misdemeanor.

[1]All references to exhibits are to those provided at Doc. 12, unless otherwise noted.

(Ex. C, p. 3A). These crimes were alleged to have occurred on October 1, 2008. (*Id*.). On November 10, 2008, the State noticed petitioner's qualification as a Prison Release Reoffender, and its intent to seek HFO sentencing. (Ex. C, pp. 15A-15B).

On November 19, 2008, petitioner was charged in Case No. 08-CF-5278 with (1) Burglary of an Unoccupied Dwelling in violation of Fla. Stat. § 810.02(1)(b) and (3)(b), a second degree felony; and (2) Grand Theft in violation of Fla. Stat. §§ 812.014(1)(a) and (b) and 812.014(2)(c)1., a third degree felony. (Ex. C, p. 3B). These crimes were alleged to have occurred on September 30, 2008. (*Id*.).

On December 4, 2008, petitioner was charged in Case No. 08-CF-5489 with (1) Burglary of an Unoccupied Dwelling in violation of Fla. Stat. § 810.02(1)(b) and (3)(b), a second degree felony; (2) Dealing in Stolen Property by Trafficking in violation of Fla. Stat. § 812.019(1), a second degree felony; and (3) Criminal Mischief in violation of Fla. Stat. § 806.13(1)(a) and (b)(2), a first degree misdemeanor. (Ex. C, p. 3C). The crimes were alleged to have occurred on September 26, 2008. (*Id*.).

On March 26, 2010, petitioner, represented by counsel, executed a written plea agreement titled "Sentence Recommendation," in which petitioner agreed to enter a straight up plea of no contest to all counts as charged in all cases, in exchange for the State agreeing to cap petitioner's maximum sentencing exposure to 20 years in state prison, as a HFO. (Ex. C, pp. 63-67). A hearing was held on March 26, 2010, at which petitioner entered his no contest plea to all charges with the understanding that he would be sentenced as a HFO on the felony counts and that there was a 20-year cap on his cumulative sentence. (Ex. C, pp. 38-52). With regard to petitioner's sentence, the court informed petitioner that his Criminal Punishment Code scoresheet reflected a lowest permissible sentence of 228.2 months in prison and a maximum possible

sentence of 115 years in prison, but that under the plea agreement, the State agreed to a cap of 20 years in prison. (*Id*., pp. 43-49). The court conducted a searching inquiry of petitioner's understanding of the nature of the charges and the consequences of his plea, and accepted petitioner's plea after ensuring itself that petitioner's plea was knowingly and voluntarily made. (*Id*.). Sentencing occurred on April 13, 2010. (*Id*., pp. 69-97). Petitioner was adjudicated guilty and sentenced on the misdemeanor counts to time served. (Ex. C, pp. 94-95). Petitioner was sentenced on the felony counts, as a HFO, to 228.2 months imprisonment on each count with the sentences to run concurrently. (Ex. C, pp. 94-95). Judgment was rendered April 13, 2010. (Ex. C, pp. 99-109). Petitioner appealed to the Florida First District Court of Appeal ("First DCA"), but voluntarily dismissed his appeal, which the court permitted on July 19, 2010. (Exs. D, E).

On August 26, 2010, petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which he subsequently amended. (Ex. G, pp. 32-43, 44-49). The court ordered a limited evidentiary hearing and appointed counsel to represent petitioner. (Ex. G, pp. 90-92). The evidentiary hearing was held on October 5, 2011. (Ex. G, pp. 97-127). On November 2, 2011, the state circuit court issued an order granting petitioner's motion in part and denying it in part. (*Id*., pp. 133-216). A corrected judgment was entered on November 3, 2011. (Ex. G, Copy of Docket Sheet for Case No. 08-CF-3028, Line 244). The First DCA affirmed on August 29, 2012. *Bluntson v. State*, 98 So. 3d 626 (Fla. 1st DCA 2012) (copy at Ex. J). The mandate issued November 2, 2012. (Ex. M). Petitioner sought discretionary review in the Florida Supreme Court, (Ex. O), but the court declined to accept jurisdiction. *Bluntson v. State*, 118 So. 3d 219 (Fla. June 19, 2013) (Table) (copy at Ex. Q).

On November 19, 2012, petitioner filed a second Rule 3.850 motion in the state circuit court. (Ex. V, pp. 1-21). The state court denied the motion as untimely and successive. (*Id*., pp. 22-72). The First DCA summarily affirmed without written opinion on January 24, 2014. *Bluntson v. State*, 2014 WL 300785 (Fla. 1st DCA Jan. 24, 2014) (Table).

Also on November 19, 2012, petitioner filed a petition for writ of habeas corpus in the First DCA. (Ex. S). The First DCA denied the petition on December 21, 2012. *Bluntson v. State*, 103 So. 3d 145 (Fla. 1st DCA Dec. 21, 2012) (Table) (copy at Ex. T).

Petitioner filed his federal habeas petition in this court on January 8, 2013. (Doc. 1, p. 14). The petition presents five grounds for relief. (Doc. 1). Petitioner asserts he exhausted his claims by raising them in his first Rule 3.850 proceeding. Respondent argues that none of petitioner's claims warrant federal habeas relief, because the state courts' resolution of the claims is consistent with clearly established federal law. (Doc. 12, pp. 14-19).

## SECTION 2254 STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2] The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established"

---

[2]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal

law). An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court, however, may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011) (*citing Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)). The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision. *See Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts). In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision

was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

CLEARLY ESTABLISHED FEDERAL LAW

All of petitioner's grounds for relief challenge the validity of petitioner's no contest plea on grounds of ineffective assistance of trial counsel. "Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, — U.S. —, 132 S. Ct. 1376, 1384, 182 L. Ed. 2d 398 (2012) (*citing Missouri v. Frye*, — U.S. —, 132 S. Ct. 1399, 1404, — L. Ed. 2d — (2012), *and McMann v. Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)). "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler*, 132 S. Ct. at 1387. The two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies to claims that counsel was ineffective during plea negotiations. *Lafler*, 132 S. Ct. at 1384 (applying *Strickland*'s two-part test to federal habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer); *Frye*, 132 S. Ct. at 1404, 1409-10 (applying *Strickland*'s two-part

test to federal habeas petitioner's claim that counsel was ineffective for failing to communicate a prosecution plea offer before it lapsed); *Hill v. Lockhart*, 474 U.S. 52, 48, 106 S.Ct. 366, 88 L. Ed. 2d 203 (1985) (applying *Strickland*'s two-part test to defendant's challenge to his guilty plea based on ineffective assistance of counsel).

*Strickland*'s first prong requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'" *Hill*, 474 U.S., at 57, 106 S. Ct. 366 (*quoting Strickland*, 466 U.S. at 688, 104 S. Ct. 2052)). *Strickland*'s second prong requires a defendant to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. 2052. In the context of pleas, "[t]he . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59, 106 S. Ct. 366.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 131 S. Ct. at 788. As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. (citations omitted).

PETITIONER'S GROUNDS FOR RELIEF

Grounds One, Two and Four

Petitioner's Grounds One, Two and Four are each labeled "Ineffective Assistance of Counsel" and challenge the validity of petitioner's plea on the grounds that petitioner was misadvised about the maximum possible penalty he faced if he went to trial. (Doc. 1, pp. 5-6).

In Ground One, petitioner claims his plea is involuntary because although he was informed of the statutory maximum for each felony count and although he agreed to be sentenced as a HFO, he was never informed of the maximum possible HFO sentence he could receive. (Doc. 1, pp. 5, 7-9). Petitioner also complains that the actual sentence imposed on each felony count – 19 years in prison – exceeded what he was told was the statutory maximum for each offense (15 years for each second degree felony and 5 years for each third degree felony). (*Id*., pp. 7-9). Petitioner alleges that because he was not told the maximum HFO sentence he could receive, he did not understand the consequences of his plea and received illegal sentences on the third degree felonies. (*Id*., p. 8).

In Ground Two, petitioner alleges that counsel was ineffective for failing to object to the illegal sentences imposed on petitioner's third degree felonies. (Doc. 1, pp. 5, 9). Petitioner asserts his sentences were illegal, because the court imposed 19 years imprisonment on each third degree felony, when the maximum HFO sentence on each count was only 10 years and the statutory maximum was 5 years. (*Id*., p. 9).

In Ground Four, petitioner alleges that counsel was ineffective for misinforming petitioner that the statutory maximum for the offense of Robbery by Sudden Snatching (Count 3 in Case No. 08-CF-3028) was 15 years, when in fact it was only 5 years. (Doc. 1, p. 6). Petitioner alleges that defense counsel conceded this misadvice at the

postconviction evidentiary hearing. Petitioner alleges that this misadvice caused him to accept the plea offer and that had counsel properly advised him, he would have gone to trial in Case No. 08-CF-3028 because his maximum sentence exposure on that case would have been only 25 years instead of the 35 years he was told. (*Id*., pp. 10-12).

In the state circuit court's order granting petitioner a limited evidentiary hearing, the court stated, in relevant part:

> In "ground one" of the Defendant's amendment to his original motion, the Defendant alleges that his counsel was ineffective for failing to object to the sentences imposed in this case for the Defendant's third degree felonies. Admittedly, the Defendant was sentenced on his third degree felonies to the lowest permissible sentence under the Criminal Punishment Code. However, the Defendant was sentenced in these cases as a habitual felony offender and, accordingly, it appears the Criminal Punishment Code does not apply. See § 775.084(4)(h), Fla. Stat. Considering the relative complexity of the legal question presented by this claim, the Court finds that the Defendant should be appointed counsel to represent the Defendant at the hearing.

(Ex. G, pp. 90-91).

After reviewing the file and hearing testimony at the evidentiary hearing, the state circuit court denied relief on these claims, as follows:

> Background
>
> The Defendant was charged with a myriad of crimes in these cases. In exchange for his plea of nolo contendere in all of these cases, the State offered to cap the Defendant's maximum sentencing exposure to twenty years in state prison, as a HFO. Attachment 1. The Defendant accepted the State's plea offer. Attachment 2. At sentencing, the prosecutor asserted to the Court:
>
> Mr. Giraud: Judge, Mr. Blunston obviously has five cases before

> us. He's got 21 prior felony convictions. He's been to state prison before. Mr. Blunston could have been a violent career criminal. He could have been a prison releasee reoffender. We chose to give him a straight up plea for a 20-year cap and as a habitual felony offender. The State submits that is probably the best deal that it will ever offer anybody under the circumstances of these cases.

Attachment 3, at page 19.

The Court sentenced the defendant, on all of his felony counts, to 228.2 months in state prison, with all of the sentences running concurrently. Attachment 4.

Ground One

The Defendant claims that his counsel was ineffective for failing to inform him of the maximum potential sentence he faced on his second and third degree felonies as a habitual felony offender ("HFO"). The Defendant asserts that had he been properly advised as [sic] the maximum potential sentences he faced as a HFO, he would have proceeded to trial and not entered his plea.

The Defendant was advised by the Court as to the "general" maximum sentence he faced. Considering all of the Defendant's cases and counts, the Defendant was informed by the Court that he faced a maximum of 115 years in prison. Attachment 2, at pages 9-11. Of course, as a HFO, the Defendant actually faced a maximum sentence of *230 years in state prison*. For the Defendant to claim that he would have insisted on proceeding to trial had he known that his sentencing exposure was *much higher* than the 115 years he was informed of is inherently incredible. "This claim is so thoroughly contrary to common sense as to be inherently incredible, and does not warrant a hearing." Evans v. State, 843 So. 2d 938, 940 (Fla. 3d DCA 2003).

On the other hand, the Court finds that the Defendant is correct

that his sentences for the third degree felonies in these cases are illegal. Such an illegal sentence may be corrected at any time. Fla. R. Crim. P. 3.800(a).

The Defendant was sentenced on his third degree felonies to the lowest permissible sentence under the Criminal Punishment Code. However, the Defendant was sentenced in these cases as a habitual felony offender and, accordingly, the Criminal Punishment Code does not apply. See § 775.084(4)(h), Fla. Stat. Therefore, the Defendant's sentences on his third degree felonies should be reduced to 10 years in state prison, the maximum sentence for a third degree felony as a HFO. The Court finds that the Defendant's sentences can be so corrected without the Defendant being present. Velez v. State, 988 So. 2d 707, 708 (Fla. 3d DCA 2008).

The Defendant claims that he was misadvised regarding the maximum possible sentence he could receive on count 3 of case number 08-3028. The Defendant's conviction on that count is for the crime of robbery by sudden snatching, a third degree felony. The Court finds that it is quite possible the Defendant was misadvised that the maximum sentence for that crime is 15 years, when the maximum is 5 years.

However, any prejudice was cured when the Court correctly advised the Defendant that the maximum sentence the Defendant faced, when considering all the counts and all the cases, was 115 years in state prison. Attachment 2, at pages 10-11. The 10 years discrepancy between the written plea agreement and the scoresheet discussed at the plea hearing was clearly due to the fact that the plea agreement incorrectly indicated that the statutory maximum for robbery by sudden snatching was 15 years, not 5 years. When the Court advised the Defendant that "there's a concern" and the court would "take the lower number" (115 years) any prejudice regarding any prior statement by counsel that the maximum was 15 years on count 3 of case number 08-3028 was cured. Id.

The Defendant testified at the evidentiary hearing that he would have taken case number 08-3028 to trial had he been advised that the

> maximum in that case was 25 years, rather than 35 years. Transcript of Evidentiary Hearing, at page 16. The Defendant explained that he entered his plea prior to jury selection on case number 08-3028 and had he been advised as to the "correct" statutory maximum of count 3 on case number 08-3028, he would have proceeded to trial in that case. Id., see also, page 23.
>
> The Court finds the claim that the Defendant would have proceeded to trial had he been correctly advised to be not credible. The Defendant was sentenced as a HFO. Therefore, pursuant [to] section 775.084(4)(a), Florida Statutes, the *actual* maximum sentence the Defendant faced on all three counts in case number 08-3028 as a HFO was *50 years* in state prison.
>
> If the Defendant agreed to accept the State's plea offer on the belief that he faced a total of 35 years in state prison, it would be illogical to argue that he would not have entered his plea had he been correctly advised of the true maximum sentence he faced as a HFO: *50* years in state prison. If the Defendant had rejected the plea offer on the belief that the absolute maximum total sentence for case number 08-3028 was 25 years in state prison, he would have rejected such a plea due to *misadvice*.
>
> Accordingly, the Defendant is not entitled to withdraw his plea due to any misadvice he may have received that the maximum sentence on count 3 for case number 08-3028 was 15 years in state prison, rather than 5 years state prison. The Defendant has not shown that there is a reasonable probability that he would have rejected the plea but for such misadvice.

(Ex. G, pp. 134-137). The circuit court disposed of petitioner's postconviction motion as follows:

> (2) The Defendant's Motion for Post-Convction Relief is hereby **GRANTED in part** in that on **all of the third degree felonies [in] the above styled cases,** the Defendant's sentences are hereby **reduced to ten years in state prison as a HFO**, *nunc pro tunc* April 13, 2010. The

> Defendant is entitled to all time served in the Department of Corrections on those sentences and, in addition, all applicable jail credit. All of the Defendant's sentences continue to run concurrently;
>
> (3) The Defendant's motion is further **GRANTED in part** in that the Defendant is granted **an additional 547 days of jail credit in case number 08-3028,** for a **total of 586 days of jail credit** in that case; and
>
> (4) **In all other respects,** the Defendant's Motion for Post-Conviction Relief is hereby **DENIED**. The Defendant has the right to appeal within thirty (30) days of the rendition of this order.

(Ex. G, pp. 145-46). A corrected judgment was entered on November 3, 2011. (Ex. G, Copy of Docket Sheet for Case No. 08-CF-3028, Line 244).

The First DCA affirmed, in relevant part:

> The trial court conducted a limited evidentiary hearing on Appellant's claims that counsel had misadvised him regarding his jail credit award and that counsel failed to object to the sentences imposed for Appellant's third degree felony counts. Also considered at the evidentiary hearing was the voluntariness of Appellant's plea when counsel mistakenly advised Appellant that his maximum sentence exposure was 125 years incarceration rather than 115 years.
>
> Considering the jail credit and sentences exceeding the statutory maximum for third degree felonies, the trial court awarded additional jail credit and corrected the sentences for the third degree felony counts after the evidentiary hearing. These sentencing errors did not render Appellant's plea involuntary and did not require the court to allow Appellant to withdraw his plea. When a sentencing error is discovered in post-conviction proceedings, the trial court has the option to "correct the sentence as may appear appropriate." Fla. R. Crim. P. 3.850(d). Appellant has failed to show any error in the trial court's disposition of these issues.
>
> Appellant's claim that counsel was ineffective for misadvising him

> of his maximum sentence exposure prior to the entry of the plea, rendering his plea involuntary, was properly rejected by the trial court. This issue was considered at the evidentiary hearing and testimony of trial counsel was presented. The trial court noted that at the original sentencing [i.e., plea hearing], the maximum sentence was discussed and the court informed Appellant that he faced a maximum of 115 years in prison if he went to trial. Any previous error by defense counsel was cured by the trial court's statement at sentencing. *Alfred v. State*, 998 So. 2d 1197 (Fla. 4th DCA 2009).

*Bluntson v. State*, 98 So. 3d at 627-28 (copy at Ex. J).

Petitioner disputes the state circuit court's determination that he faced a maximum possible sentence of 230 years in prison as a HFO. Petitioner argues that that number reflects the imposition of consecutive enhanced sentences, but because some of his offenses were committed during the same criminal episode, not all of his sentences could run consecutively. (Doc. 15, p. 3 (*citing Hale v. State*, 630 So. 2d 521 (Fla. 1993) (holding that a trial court may not impose consecutive enhanced sentences for crimes committed during a single criminal episode))). Even assuming for purposes of argument that petitioner's HFO sentences in any given case would have to run concurrent with the remaining sentences imposed in that case, the fact remains that petitioner's five criminal cases involved five separate victims and occurred in five separate locations on five different dates. Given these facts, the sentencing court would be permitted to run the total sentence in each of petitioner's cases consecutive to the other cases, resulting in a maximum possible sentence of 150 years in prison.[3] Whether petitioner's maximum sentence exposure as a HFO was 230 years or 150 years, it was still much higher than petitioner was willing to risk. As the record

[3]Each of petitioner's five cases involved at least one second degree felony, which carries a maximum possible HFO sentence of 30 years. *See* Fla. Stat. § 775.084(4)(a).

demonstrates, petitioner was not even willing to risk 115 years in prison. Because petitioner failed to establish a reasonable probability that had he known the true risk of going to trial (230 or 150 years rather than the 115 years he was told) he would have rejected the plea offer and insisted on going to trial, he failed to establish the requisite prejudice under *Strickland*.

As to Ground Two, it was reasonable for the state courts to conclude that petitioner failed to establish he was prejudiced by counsel's failure to object to the illegal sentences on his third degree felonies, because the trial court later reduced each of those sentences from 19 years to 10 years, which is a legal HFO sentence for a third degree felony.

As to Ground Four, it was reasonable for the state courts to conclude that petitioner failed to establish he was prejudiced by counsel's misadvising him that the statutory maximum for Robbery by Sudden Snatching (a third degree felony) was 15 years rather than 5 years, because the trial court cured counsel's misadvice during the March 26, 2010 plea hearing when the court clarified with petitioner that his sentence exposure according to the statutory maximums was 115 years and not the 125 years counsel listed on the plea agreement. (*See* Ex. C, pp. 41-48).

The state courts' rejection of petitioner's claims was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard. Nor were the state courts' decisions based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief on Ground One, Two, or Four.

<u>Ground Three</u>

In Ground Three, petitioner claims counsel was ineffective for misadvising petitioner regarding his jail credits. (Doc. 1, p. 6). Petitioner alleges that counsel erroneously advised him he would receive over 500 days jail credit on all of his cases

if he accepted the plea offer, when in fact petitioner was entitled to and received only 39 days of jail credit in Case No. 08-CF-3280. (*Id*., p. 10). Petitioner argues that had he been accurately informed about his jail credit in Case No. 03-CF-3280, he would have rejected the plea offer and gone to trial.

After hearing testimony at the evidentiary hearing, the state circuit court denied relief on petitioner's claim as follows:

> The Defendant claims that his counsel was ineffective for failing to correctly advise the Defendant regarding jail credit. The State conceded at the evidentiary hearing that his claim has merit in that had counsel raised the issue to the Court at sentencing, there is a significant probability the Court would have granted the Defendant jail credit for time that the Defendant was technically "on bond," but in jail on unrelated offenses. Transcript of Evidentiary Hearing, at page 28. The Court finds it reasonably likely that the Court would have granted the additional jail credit for this time had the issue been raised at sentencing. Therefore, the Court will grant the Defendant the appropriate additional jail credit in case number 08-3028.
>
> However, the Court finds that the Defendant has not carried his burden in showing that had he been correctly advised as to his jail credit, he would have not entered his plea and insisted on proceeding to trial. Indeed, the Court finds such a claim to be not credible. The Defendant is not entitled to withdraw his plea due to the jail credit issue.

(Ex. G, pp. 137-38). The circuit court awarded petitioner an additional 547 days of jail credit in Case No. 08-CF-3028, for a total of 586 days of jail credit in that case, and corrected the judgment accordingly. (*Id*., p. 146).

The First DCA affirmed, explaining, in relevant part:

> Considering the jail credit . . ., the trial court awarded additional jail credit. . . . Th[is] sentencing error[ ] did not render Appellant's plea involuntary and did not require the court to allow Appellant to withdraw his plea. When a sentencing error is discovered in post-conviction proceedings, the trial court has the option to "correct the sentence as may

> appear appropriate." Fla. R. Crim. P. 3.850(d). Appellant has failed to show any error in the trial court's disposition of th[is] issue[ ].

*Bluntson v. State*, 98 So. 3d at 627 (copy at Ex. J).

The state courts reasonably concluded that petitioner failed to establish he was prejudiced by counsel's advising him he would receive 500 days of jail credit, given that he eventually received 586 days of jail credit as promised. The state courts' rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard. Nor were the state courts' decisions based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief on Ground Three.

Ground Five

Petitioner's final claim is that counsel was ineffective for "permitting petitioner to entered [sic] a plea of guilty to a 2nd degree felony to Robbery by Sudden Snatching with a Weapon when there was [no] factual support that petitioner possess[ed] a weapon" and the information did not charge him with Robbery by Sudden Snatching with a Weapon. (Doc. 1, pp. 12, 13). Petitioner alleges that "there was no factual basis to enhance Robbery by Sudden Snatching to a 2nd degree felony base[d] on the use of a weapon." (*Id.*). As support for petitioner's contention that he was convicted on Count 3 in Case No. 08-CF-3028 of the second degree felony of Robbery by Sudden Snatching With a Weapon, rather than the third degree felony of Robbery by Sudden Snatching Without a Weapon, petitioner points to the fact that it was stated in both his plea agreement and during the plea colloquy that the statutory maximum for the offense charged in Count 3 was 15 years in prison (which is the statutory maximum for a second degree felony) rather than 5 years in prison (the statutory maximum for a third degree felony). Petitioner argues that this proves that

his conviction on the Robbery by Sudden Snatching count in Case No. 08-CF-3028 was for the second degree felony of Robbery by Sudden Snatching With a Weapon, and not the third degree felony of Robbery by Sudden Snatching Without a Weapon.

The state circuit court rejected petitioner's claim as conclusively refuted by the record. The state court ruled as follows:

> Claim that there is no factual basis for robbery by sudden snatching conviction
>
> In case number 03-3028, on Count three, the Defendant was convicted of robbery by sudden snatching, a third degree felony. The Defendant's claim that he was improperly convicted of a second degree felony is without merit and conclusively refuted by the record. Attachment 4.
>
> The Defendant asserts that there is no factual basis for the robbery by sudden snatching conviction. This claim is refuted by the record. True, a defendant can challenge the factual basis for his plea in a rule 3.850 motion. Harris v. State, 32 So. 3d 197 (Fla. 4th DCA 2010). However, such a claim may be refuted by attachment of discovery documents – such as police reports, probable cause affidavits, or depositions – establishing that a factual basis actually existed. Id.; see also Benavidez v. State, 749 So. 2d 528, 529 (Fla. 2d DCA 1999) (Concerning claim that "trial counsel was ineffective for advising [defendant] to plea no contest to a crime that he did not commit and for which no factual basis was established," claim could be refuted "[i]f other documents in the court file, such as police affidavits, substantiate the factual basis for the offense, the court can . . . summarily deny [defendant's] claim and attach the supporting documents to its order.").
>
> According to the arrest report, the victim caught the Defendant stealing her property. Attachment 7. During the time the victim was interacting with the Defendant, the victim's cellular telephone was on and was connected to a telephone being used by the victim's boyfriend. The arrest report details the Defendant "*snatched the phone out of [the victim's] hands* and told her, 'You can't call the police.' the victim said

> that the Defendant then "threw the phone on the ground and ran away." Id. (emphasis added). Thus, the record conclusively refutes the Defendant's claim that there was no factual basis for his robbery by sudden snatching conviction.

(Ex. G, pp. 140-41). The First DCA affirmed. *Bluntson v. State*, 98 So. 3d 626 (Fla. 1st DCA 2012) (copy at Ex. J).

Petitioner's claim here advances only petitioner's contention that his conviction on Count 3 in Case No. 08-CF-3028 is for Robbery by Sudden Snatching With a Weapon, instead of Robbery by Sudden Snatching Without a Weapon. (*See* Doc. 1, pp. 12-13; *see also* Doc. 15, p. 12 (clarifying that petitioner's claim "was not that there was no factual basis for robbery by sudden snatching, but that there was no factual basis for robbery by sudden snatching with a weapon, a 2nd degree felony.")).

The state courts' finding that the crime for which petitioner was convicted on Count 3 in Case No. 08-CF-3028 was Robbery by Sudden Snatching Without a Weapon (a third degree felony) and not Robbery by Sudden Snatching With a Weapon (a second degree felony) is amply supported by the record. The charging document in Case No. 08-CF-3028 conclusively establishes that petitioner was charged in Count 3 with the third degree felony of "Robbery by Sudden Snatching" with no reference to a weapon. (Ex. C, p. 1). At the plea colloquy, the trial court described the charge as "robbery by sudden snatching," with no mention of a weapon. (Ex. C, p. 41). Petitioner's Criminal Punishment Code scoresheet identified petitioner's offense as: "3rd Deg 812.131(2)(B); Description: Sudden Snatch No Weapon" (Ex. C, p. 53). The crime identified in Fla. Stat. § 812.131(2)(b) is robbery by sudden snatching with no firearm or other deadly weapon and is categorized as a third degree felony. The crime of robbery by sudden snatching with a firearm or weapon is identified as a violation of Fla. Stat. § 812.131(2)(a), and is categorized as

a second degree felony. Petitioner's judgment of conviction identifies petitioner's conviction on Count 3 of Case No. 08-CF-3028 as "Robbery By Sudden Snatching," and identifies the degree of the crime as "F3," meaning, third degree felony. (Ex. C, p. 99). Petitioner's corrected sentence on Count 3 of Case No. 08-CF-3028 was 10 years in prison as a HFO. Petitioner's sentence was enhanced based on his status as a HFO, not on use of a weapon. (*See* Ex. G, pp. 135-37, 145). As the record conclusively rebuts the factual premise of petitioner's claim – that counsel "permitted" him to be convicted of the second degree felony of Robbery by Sudden Snatching With a Weapon – it was not unreasonable for the state courts to deny relief on petitioner's ineffective assistance claim.

The state courts' rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard. Nor were the state courts' decisions based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief on Ground Five.

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning

of this term) (citation omitted). Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1. That the petition for writ of habeas corpus (doc. 1), challenging petitioner's judgment of conviction and sentence in *State of Florida v. Jonathan Berry Blunston*, Escambia County, Florida, Circuit Court Case Numbers 08-CF-3028, 08-CF-5241, 08-CF-5242, 08-CF-5278 and 08-CF-5489 be DENIED, and the clerk be directed to close the file.

2. That a certificate of appealability be DENIED.

At Pensacola, Florida this 7th day of August, 2014.

/s/ Charles J. Kahn, Jr.

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. §

636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).